**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT W. JUNKE and TONI L. HILL, | ) | |
| Plaintiffs, | ) | Civil Action No. 23-1334 |
| v. | ) | |
| | ) | Chief United States Magistrate Judge Dodge |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiffs Robert W. Junke ("Junke") and Toni L. Hill ("Hill") bring this action against the United States of America, pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422. They seek a refund of $1,608,012.00 in penalties they paid to the Internal Revenue Service (IRS) under Internal Revenue Code Sections 6039F and/or 6677, for tax years 2003 through 2005 and 2010. The penalty was assessed for allegedly failing to disclose their placement of assets in a Swiss bank by using a structure where the bank account was held in the name of a foreign corporation and the corporation's shares were held by a foreign trust.

Presently pending before the Court are the partiers' cross-motions for summary judgment (ECF Nos. 109, 114). For the reasons that follow, Defendant's motion will be granted and Plaintiff's motion will be denied as moot.

## I. Procedural History

Plaintiffs commenced this action on June 25, 2023. In the original Complaint, they sought $2,136,103.36 plus interest, costs and attorney's fees, for tax years 2003 to 2012 (ECF No. 1). In response to a partial motion to dismiss filed by Defendant, they filed an Amended Complaint on January 10, 2024 that removed tax years 2006, 2007, 2008, 2009, 2011 and 2012. Thus, they are

seeking a refund only for tax years 2003, 2004, 2005 and 2010 in the amount of $1,608,012.00 (ECF No. 36).

On December 12, 2025, the parties filed cross-motions for summary judgment (ECF Nos. 109, 114) which have been fully briefed (ECF Nos. 110, 115, 119, 123, 129, 131). Oral argument was held on May 13, 2026.[1] Therefore, the motions are ripe for disposition.

## II. **Factual Allegations**

### A. Creation of AVL and Related Activities

Around 1999, Junke was referred to Harold Chaffe ("Chaffe"), a business planning professional in England. Junke contacted Chaffe to discuss business planning and ways to responsibly safeguard the personal assets of Junke and Hill from commercial liabilities. Chaffe sent Junke a fax on December 14, 1999 that outlined a proposal for a structure involving a company—Ashbury View Limited ("AVL")—that would be owned by a trust known as the Dorchester Settlement Trust (the "Trust") (Plaintiffs' Concise Statement of Material Facts ("PCSMF") ¶¶ 19-21 (ECF No. 116.)[2]

On or about November of 2000, Junke and Hill placed ownership of their personal Swiss bank account at Credit Suisse into AVL. Bearer share certificates were created as part of the formation of AVL. (*Id.* ¶¶ 26, 31.)

---

[1] Subsequently, the parties participated in a judicial settlement conference before another judicial officer but were unable to reach a resolution.

[2] Plaintiffs' Concise Statement includes a number of statements about their backgrounds and the history of Junke's investments and employment that made him concerned about Plaintiffs' personal assets and presumably led to the investment structure at issue. (PCSMF ¶¶ 1-18.) The Court agrees with Defendant that these matters are not material to the resolution of the pending motions.

According to Plaintiffs, the bearer shares were mailed to Junke, who placed them in a vault in the basement of their home. They assert that they have retained possession of the AVL shares at all times and that, after July 10, 2000, when the Trust was established under the laws of Gibraltar, Chaffe never prepared or executed any documents which put ownership of AVL into the Trust. Further, neither Junke nor Hill ever surrendered the bearer shares to Chaffe or to a trustee of the Trust, and instead retained the Trust because "maintenance wasn't much" and "it could have been used for a rainy day." (*Id.* ¶¶ 32-38.)

Defendant contends that ownership of AVL was, in fact, transferred into the Trust. (Defendant's Response to Plaintiffs' Statement of Undisputed Facts ("DRPSUF") ¶¶ 32-38 (ECF No. 120.) It points to the following documents in support of its position:

> Ex. 7 – According to this document, Plaintiffs structured their Swiss account to have AVL as the named account holder in order to implement a structure that would include ownership of that corporation by a trust. The letter also included references to "undated share transfers."
>
> Ex. 9 – A document was prepared that would have transferred all shares of AVL to Athos Fouttis, the trustee of the Trust. During his deposition, Junke testified this is a true and correct copy of this document. (Ex. 46 (Junke Dep. 91:15–92:18)).
>
> Exs. 10, 12, 14, and 17 – Forms 3520A for years 2003, 2004, 2005, and 2010, submitted to an IRS employee by Plaintiffs that list the Trust holding assets in the approximate amount of the value of the Credit Suisse account held in the name of AVL. Junke authenticated these documents at his deposition. (Ex. 46 (Junke Dep. 208:1–23, 224:19–225:11, 234:7–21, 239:16–240:8).
>
> Exs. 11, 13, 15, and 18 – Forms 3520 for years 2003, 2004, 2005, and 2010, submitted to an IRS employee by Plaintiffs that list the Trust holding assets in the approximate amount of the value of the Credit Suisse account held in the name of AVL. Junke authenticated these documents at his deposition. ((Ex. 46 (Junke Dep. 217:25–218:19, 226:25–227:16, 235:18–236:5, 241:18–242:7)).
>
> Ex. 19 – This exhibit includes an irrevocable instrument of renunciation signed by Junke and Hill stating that "among the assets of the Trust are all of the shares of Ashbury View Limited." (JUNKE_001209). It also includes an email from an attorney describing the shares of AVL as "owned by the trustee of the [Trust]." (JUNKE_001194) (available at dkt. 117-3 at 114, 120).

> Ex. 22 – This exhibit includes a sworn statement by Junke and Hill that "[i]n Europe we placed all of the assets in a trust." (USA-0000246–47).
>
> Ex. 23 – This business record of the IRS includes notes from an interview of Hill where she stated that the Trust "[h]eld shares [of] Ashbury." (USA-0002279).
>
> Ex. 26 – This exhibit shows an admission by the taxpayers that the shares of AVL were held by a Gibraltar trust called Dorchester. (USA-0002590). Junke authenticated this document at his deposition. ((Ex. 46 (Junke Dep. 312:19–313:12)).

(*Id.* ¶ 32.)

Plaintiffs counter that none of these exhibits refute their statements that the bearer shares were sent to Junke and stored in his safe. Further, the advice letter Chaffe sent prior to any action being taken does not rebut what happened later. Plaintiffs also note that their prior statements about the Trust were mistaken. (Plaintiffs' Reply to Defendant's Response to Plaintiffs' Statement of Undisputed Facts ("PRDRPSUF") ¶ 32 (ECF No. 132.) According to Plaintiffs, they maintained control of the AVL account from 2000 until 2008 and were able to make withdrawals, transfers, and trades. (PCSMF ¶ 40.) Defendant notes, however, that Hill testified at her deposition that in order to make a trade, she had to contact an employee of Credit Suisse, who would then contact Athos Fouttis, the trustee of the Trust. (DRPSUF ¶ 40.)

On December 18, 2008, Credit Suisse sent notice that the bank was closing the AVL account effective, at the latest, January 20, 2009. After this account was closed, its assets were transferred to Basler Kantonalbank. (PCSMF ¶¶ 41-42.)

Plaintiffs later received a letter from Credit Suisse on or about November 2, 2011 advising that the IRS was "seeking information with regard to accounts of certain US persons owned through a domiciliary company (as beneficial owners) that have been maintained with CREDIT SUISSE AG (*CREDIT SUISSE*) in Switzerland (as applicable in a given case in the 'IRS Treaty

Request') at any time during the years January 1, 2002 through and ending on December 31, 2010." The letter referred to them as the "beneficial owners of Accounts with Credit Suisse." (*Id.* ¶¶ 43-44.) Based on evidence to the contrary as referenced above, Defendant denies that this statement proves that they were, in fact, the beneficial owners. (DRPSUF ¶¶ 43-44.)

B. Entry into OVDP Program and Subsequent IRS Audit

Plaintiffs retained the law firm of Kostelanetz and Fink LLP ("K&F"), who recommended that they enter the IRS's Offshore Voluntary Disclosure Program ("OVDP") and that they terminate the Trust, AVL, and a third entity called Espial Trading Limited ("Espial"). (PCSMF ¶¶ 45-47.) Because of the exorbitant cost of terminating these entities, however, Plaintiffs instead decided on advice of counsel to renounce them. On September 11, 2012, Plaintiffs renounced their interest in AVL, the Trust, and Espial. Plaintiffs claim that the renunciation erroneously noted the Trust contained the assets of AVL. (*Id.* ¶¶ 50, 52.) Defendant denies that this notation was erroneous. (DRPSUF ¶ 52.)

Once Junke and Hill joined OVDP, IRS Agents began communicating with them directly. IRS Revenue Agents Tracy Mano and Jenny Lee ultimately advised Plaintiffs to opt out of the program. Consequently, they opted out of the OVDP in September 2016. (PCSMF ¶¶ 53-54; DRPSUF ¶ 54.)[3]

After Plaintiffs opted out of OVDP, they were audited by the IRS. According to Plaintiffs, IRS Revenue Agent Bryan Davis presented them during the audit with IRS Forms 3520 and 3520-A to sign. This was based on the documents in his possession and based on the erroneous assumption that the Trust contained AVL assets. (PCSMF ¶¶ 55-56.) Defendant notes that because

[3] Defendant denies that any revenue agent encouraged them to opt out of OVDP (DRPSUF ¶ 53), but as Plaintiffs note, this denial is not supported by any citation to the record. (PRDRPSUF ¶ 53.)

contemporaneous IRS records reflect that the IRS agent assigned to the case was "skeptical of the Forms 3520 submitted," it is not reasonable to conclude that the agent both presented these forms to Plaintiffs and then expressed skepticism about their veracity when they were submitted to him. (DRPSUF ¶ 56.) Plaintiffs note that the mere fact that an unnamed IRS agent was skeptical does not contradict their statement that Davis presented the forms to them. (PRDRPSUF ¶ 56.)

C. IRS Penalties

Applying Internal Revenue Code §§ 6039F and/or 6677, the IRS assessed penalties in 2018 against Plaintiffs for tax years 2003, 2004, 2005 and 2010. (PCSMF ¶ 57.) Previously, in 2015, Plaintiffs had prepaid the entire balance of the penalties assessed, paying $380,430.00 for tax year 200, $526,989.00 for tax year 2004, $614,027.00 for tax year 2005 and $86,566.00 for tax year 2010, for a total of $1,608,012.00. (*Id.* ¶¶ 58-62.)

On April 17 and 18, 2019, Junke and Hill executed separate affidavits disclaiming any prior erroneous statements that they may have made indicating that AVL owned, contributed, assigned, pledged, was given to, or was held by the Trust. By this time, they realized that they had been mistaken that the assets of AVL had actually been placed in the Trust. (PCSMF ¶¶ 63-64.) Defendant disputes that Plaintiffs made a mistake, citing contradictory evidence in the record that AVL was owned by the Trust. (DRPSUF ¶¶ 63-64.)

D. Plaintiff's Refund Claim

The parties dispute whether Plaintiffs properly or timely filed with the IRS a refund claim for the penalties imposed. Plaintiffs claim that on November 19, 2019, they filed a claim with the IRS for a refund and request for abatement of the penalties wrongfully assessed against them. (PCSMF ¶ 66.)[4] Plaintiffs acknowledge that they relied on their attorney, Jeffrey Freeman, to

[4] Defendant notes that the refund claim Plaintiffs claimed to have filed was purportedly mailed on

submit the claim (Plaintiffs' Response to Defendant's Statement of Undisputed [Facts] ("PRDSUF") ¶ 2 (ECF No. 124) and have no personal knowledge of his actions in this regard. (DSUF ¶ 2.)

Plaintiffs note, however, that the files of the IRS contain multiple copies of the refund claim for tax years 2003, 2004, 2005 as well as related information. Plaintiffs submitted a Freedom of Information (FOIA) request on August 1, 2022 seeking "all files" relating to their civil penalties for tax years 2003-2012. The IRS response, provided on January 19, 2023, contains at least four internal communications discussing and reviewing Plaintiffs' submission of a Form 843 refund claim, including a July 27, 2021 note that the "Form 843 [was directed to] be processed and a determination on Claim be made." Accordingly, Plaintiffs claim, the "IRS Account Transcript reflects that the claims for refund were subsequently denied." (PRDSUF ¶¶ 3, 16-20.)

In turn, Defendant states that neither the refund claim nor any information related to its mailing is in the relevant files of the IRS. (DSUF ¶ 3.) It asserts that the documents on which Plaintiffs attempt to rely do not support their contention that the IRS files contain copies of the refund claim. Rather, Exhibit B is merely a list of a range of documents produced to Plaintiffs as a result of the FOIA request. Exhibit C is a Taxpayer Advocate Service ("TAS")[5] document from January 17, 2020 that states that Freeman "is sending Form 843 for penalty abatement," but does not demonstrate that Plaintiffs previously submitted a timely claim for refund. Exhibit C includes

November 14, 2019, despite the fact the signature of Jeffrey Freeman on that claim is dated November 19, 2019. (DRPSUF ¶ 66; Defendant's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment ("DSUF") ¶ 1 (ECF No. 111.) Freeman's letter was dated November 14, 2019, and the Form 843 appears to have been signed by him on November 19, suggesting that the documents were mailed no earlier than November 19. (ECF No. 125 Ex. A.)

[5] Defendant asserts that the TAS is "an independent organization within the IRS" that is not charged with examining or ruling on refund claims. (DRPRDSUF ¶ 18.)

a copy of the purported submission in November 2019 but Defendant claims that this does not prove that the IRS Service Center in Ogden, Utah actually received it. Exhibits D and F are TAS documents that relate to a "request for abatement," not a refund claim, and do not demonstrate that the IRS timely received a duly filed refund claim. Exhibit E is a letter dated October 30, 2019 from the IRS to Junke, but it predates November 2019, when the refund claim was supposedly sent.[6]

According to Defendant, the IRS also has no documentation of the denial of a claim for refund. (DSUF ¶ 4.) Plaintiffs dispute this statement, contending that IRS Account Transcripts (ECF No. 125 Exs. G-J) and Certificates of Assessments, Payments and Other Specified Matters (*id.* Ex. K) reflect such a denial. (PRDSUF ¶ 4.) Defendant notes, however, that although these documents contain the notation "disallowed claim," they do not identify what claim was being disallowed and do not demonstrate that Plaintiffs duly filed a refund claim. (Defendant's Reply to Plaintiffs' Response to Defendant's Statement of Undisputed Facts ("DRPRDSUF") ¶ 4 (ECF No. 130.)

It is undisputed that the claim for refund that Plaintiffs rely upon in this case was not signed by either of them, but was signed by their attorney, Jeffrey Freeman. (DSUF ¶ 5.) Defendant states that there is no evidence that a Form 2848 (a power of attorney form) accompanied the refund claim. (*Id.* ¶ 6.) Plaintiffs note, however, that throughout the tax appeal and refund claim, the IRS acknowledged and recognized that Freeman had a valid power of attorney on file with the IRS and that his authority was recognized in connection with the refund claim. (PRDSUF ¶ 6.)

In its reply, Defendant again asserts that Plaintiffs' materials do not support their position: Exhibits K, L and M are all dated prior to November 2019, so they cannot create a material issue

[6] Defendant also contends that Exhibit C through F constitute hearsay and Plaintiffs do not even address whether they can be considered under an exception to the hearsay rule. (DRPRDSUF ¶¶ 3, 16-20.)

of fact as to whether a Form 2848 accompanied the November 2019 claim for refund. And Exhibit C, a TAS document dated January 2020, merely states that Freeman "is sending" a Form 843 in the future. (DRPRDSUF ¶ 6.)

Defendant states that the only Form 2848 Plaintiffs allege gave Freeman the authority to sign their refund claim applied to tax years 2008 to 2018. (DSUF ¶ 7.) Plaintiffs respond that the form denotes "year(s)" or "period(s)" and that IRS records reflect that the agency "moved money from older years to 2008" when applying penalties. They also note that internal records indicate that IRS officials spoke "w/POA on 3/2/19," sent him a ruling on the penalty appeal on October 30, 2019 "under the provisions of [his] power of attorney . . . on file" and indicated on January 17, 2020 that "POA is sending Form 843 for penalty abatement." (PRDSUF ¶ 7.) Defendant replies that these materials either predate the claim for refund or merely state that something will be sent in the future. (DRPRDSUF ¶ 7.)

The Form 3520-A submitted by Plaintiffs for tax year 2010 was not signed on page 1 as required and the Form 3520 was not signed. (DSUF ¶¶ 14-15.)

## III. Standard of Review

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a

genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

The summary judgment rules do not apply any differently to cross-motions. *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008). "'Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Id.* (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). If upon review of cross-motions for summary judgment the court finds no genuine dispute over material facts, then judgment will be entered in favor of the party deserving judgment considering the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

## IV. Analysis

The Court turns first to Defendant's motion for summary judgment. Defendant contends that the Court lacks subject matter jurisdiction over Plaintiffs' claim as they failed to submit a proper and/or timely claim for refund, no power of attorney form was attached that would cover years 2003-2005 and the only form that was allegedly submitted (which would cover tax year 2010) was untimely.[7]

Plaintiffs counter that that there is record evidence that not only did the IRS receive the claim, but it took actions that reflect receipt. Further, they gave Freeman their power of attorney to submit the claim and the claim was denied on the merits. Therefore, they contend, Defendant's technical procedural arguments have been waived.

### A. Framework for Filing Refund Claims

Defendant's jurisdictional argument is based on the provisions of the Internal Revenue Code, which provides in relevant part that:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). A taxpayer is required to file a claim for refund within the later of three years from the date the return was filed or two years from the date the tax was paid. 26 U.S.C. § 6511(a). The timely filing of a refund claim is a jurisdictional prerequisite to bringing suit. *See United States*

---

[7] Defendant also argues that Plaintiffs cannot rely on advice they allegedly received from IRS employees with respect to the filing of Forms 3520 and 3520-A because they have no evidence of affirmative misconduct. The Court need not reach this argument.

*v. Dalm*, 494 U.S. 596, 609 (1990).

As Plaintiffs point out, Defendant did not raise the issue of subject matter jurisdiction during the administrative process or in its Answer. Instead, it raised it for the first time in a motion for summary judgment filed two and a half years after the commencement of this action. Thus, Plaintiffs contend that this defense was waived because the failure to raise an affirmative defense in a responsive pleading or appropriate motion "generally results in the waiver of that defense." (ECF No. 123 at 9 n.4) (quoting *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991)).

As noted above, however, it is a jurisdictional prerequisite to bringing suit, rather than an affirmative defense, that a taxpayer seeking a tax refund must have submitted a proper and timely claim. *See Comm'r v. Lundy*, 516 U.S. 235, 240 (1996) (referring to § 7422(a) as a provision making the "timely filing of a refund claim a jurisdictional prerequisite to bringing suit"). Because federal courts are courts of limited jurisdiction, it is "presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is Plaintiffs' burden to establish jurisdiction in this case.[8]

The Internal Revenue Code provides that "the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be." 26 U.S.C. § 7502(a)(1). "This exception means that a document will be deemed timely filed so long as two things are true: (1) the document is *actually delivered* to the IRS, even if after the deadline; and

[8] Based upon more recent Supreme Court holdings, at least one court has recognized that the inadequacy of a filing does not implicate subject matter jurisdiction, but a plaintiff's failure to file a claim for refund within the statutory time frame at all remains a jurisdictional bar to suit. *See Brown v. United States*, 22 F.4th 1008, 1011 (Fed. Cir. 2022).

(2) the document is postmarked on or before the deadline. If the document is never delivered at all—say, because it gets lost in the mail—the exception by its terms does not apply." *Baldwin v. United States*, 921 F.3d 836, 840 (9th Cir. 2019) (citation omitted).

If the claim is sent by registered or certified mail, the registration shall be prima facie evidence that it was delivered and the date of the registration shall be deemed the postmark date. 26 U.S.C. § 7502(c). "Any statutory presumption of *delivery* must come from § 7502(c). And that subsection only provides a delivery presumption when using registered or certified mail. Its presumption of delivery does not extend to first-class mail; only to registered or certified mail." *Pond v. United States*, 69 F.4th 155, 163 (4th Cir. 2023) (footnote omitted).

A Treasury regulation reiterates these provisions. *See* 26 C.F.R. § 301.7502-1(c)(1)(iii) (regarding postmarks on first-class mail); § 301.7502-1(c)(2) (regarding registered mail and certified mail). The regulation further provides that:

> In the case of a document (but not a payment) sent by registered or certified mail, proof that the document was properly registered or that a postmarked certified mail sender's receipt was properly issued and that the envelope was properly addressed to the agency, officer, or office constitutes prima facie evidence that the document was delivered to the agency, officer, or office. Other than direct proof of actual delivery, proof of proper use of registered or certified mail, and proof of proper use of a duly designated PDS [private delivery service] . . . are the exclusive means to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed. No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.

26 C.F.R. § 301.7502-1(e)(2)(i). *See Maine Med. Ctr. v. United States*, 675 F.3d 110, 118 (1st Cir. 2012) (noting that the "regulations further emphasize the exclusivity of the exceptions."); *McBrady v. United States*, 167 F. Supp. 3d 1012, 1017 (D. Minn. 2016) (same).

A claim "generally must be filed with the service center at which the taxpayer currently would be required to file a tax return for the type of tax to which the claim relates or via the

appropriate electronic portal." 26 C.F.R. § 301.6402-2(a)(2). *See also* 26 C.F.R. § 301.7502-1(c)(1)(i) ("The document or payment must be contained in an envelope, properly addressed to the agency, officer, or office with which the document is required to be filed or to which the payment is required to be made.") In addition, the claim "must be verified by a written declaration that it is made under the penalties of perjury." 26 C.F.R. § 301.6402-2(b)(1).

Courts have recognized these requirements. *See Dzula v. United States*, 349 F. App'x 335, 338 (10th Cir. 2009) ("Dzula mailed his requests to the IRS Service Center in Phoenix, Arizona, rather than the IRS Service Center in Austin, Texas, which was the center that served his district during the relevant time period and was the address listed on the forms."); *Lawson v. United States Internal Revenue Servs.*, 2016 WL 4179790, at *5 (D.R.I. July 8, 2016) (taxpayers did not allege that they properly submitted a refund claim to the relevant service center, only that they had communications with the IRS, and they never received a denial form), *report and recommendation adopted*, 2016 WL 4179886 (D.R.I. Aug. 5, 2016); *Mills v. United States*, 154 Fed. Cl. 549, 556 (2021) (the plaintiff's digital markings on his second amended returns do not meet the requirement that his returns "be signed" and, as a refund claim, "be verified by a written declaration that it is made under the penalties of perjury.")

B. Was the Claim Properly Filed?

In support of its motion for summary judgment, Defendant contends that Plaintiffs cannot prove that they properly submitted their refund claim. They note that in order to be duly filed, the claim must have been submitted by October 18, 2020 to "Internal Revenue Center, P.O. Box 409101, Ogden, UT 84409."[9] Moreover, proof of mailing is limited to "proof of proper use of

[9] See 2017 Instructions for Form 3520, at *2 (available at https://perma.cc/9587-47GN); 2017 Instructions for Form 3520-A, at *1 (available at https://perma.cc/92K4-JWEA).

registered or certified mail" or "proof of proper use of a duly designated private delivery service," and Plaintiffs have not submitted either form of proof. Instead, Plaintiffs reference a document which was addressed to "Department of Treasury, Internal Revenue Service, Ogden, UT 84201-0002," a different IRS address, and a copy was located only in the Philadelphia office of the TAS. Therefore, Defendant contends that this evidence fails to establish that Plaintiffs properly filed a timely claim with the correct IRS service center.

There are three ways in which Plaintiffs could present a prima facie case that they properly submitted a refund claim: (1) certified or registered mail; (2) an official postmark; or (3) direct evidence of mailing. Plaintiffs undisputedly do not have evidence of either of the first two methods and do not contend otherwise. Instead, they appear to be relying on direct evidence of mailing. They assert that the IRS's own files demonstrate that their refund claim was properly submitted and received.[10] They point to the following documents: (1) a January 17, 2020 Operations Assistance Request (ECF No. 125 Ex. C); (2) a July 17, 2021 Operations Assistance Request with a recommendation that "the attached Form 843 be processed and a determination on Claim be made" (*id.* Ex. D at USA-000458); (3) IRS Account Transcripts for tax years 2003 to 2005 (*id.* Exs. G, H, I) and 2010 (*id.* Ex. J) reflecting denials of the refund claims; and (4) a Form 4340 Certificate of Assessments, Payments and Other Specified Matters with the notation "claim disallowed" for each year in question (*id.* Ex. K at USA-000032, 0038, 0044 and 0089).

Defendant contends that none of this evidence constitutes direct proof of mailing and in any event, is insufficient to represent direct proof of mailing. It notes that (1) Exhibit C merely shows that the TAS office in Philadelphia had a copy of the refund claim in January 2020; (2)

---

[10] Plaintiff do not address the fact that the document they cite was not addressed to the proper IRS service center in Ogden, Utah.

Exhibits D and F are TAS records dated July 2021, which is after the filing deadline, and they do not state either when or where the Form 843 was submitted; (3) Exhibit E is a letter sent by the IRS in October 2019 (before the refund claim was allegedly mailed); and (4) Exhibits G-I merely show the IRS disallowed "claims" in August and September 2021, but do not establish the dates or locations those claims were filed.

In *Philadelphia Marine Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140 (3d Cir. 2008), while the Third Circuit allowed for a common-law mailbox rule exception to the timely submission of a claim, it recognized that the then proposed (and now extant) regulation, 26 C.F.R. § 301.7502-1(e)(2), "would seemingly negate this holding." *Id.* at 152 n.14. "The Third Circuit's dicta in *Philadelphia Marine* suggests that, after § 301.7502-1(e)(2)(i), § 7502 displaces the common-law mailbox rule." *Crispino v. United States Internal Revenue Serv.*, 2021 WL 3910000, at *5 (D.N.J. July 26, 2021). Indeed, a number of courts have held that this regulation displaces the common-law rule. *See Baldwin,* 921 F.3d at 842; *Pond*, 69 F.4th at 163;[11] *Miller v. United States*, 784 F.2d 728, 731 (6th Cir. 1986); *Deutsch v. Comm'r*, 599 F.2d 44, 46 (2d Cir. 1979).

Moreover, the fact that a Form 843 was found in a TAS file would not be sufficient to invoke the common-law mailbox rule in any event. *See, e.g., Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 137 & n.7 (3d Cir. 2019) (second-hand accounts by non-mailers that a complaint "was transmitted" to an agency by first-class mail was insufficient and even if given a presumption of delivery, it would be a "weak presumption" that was overcome by agency's denial of receipt and

[11] In *Pond*, the court did not dismiss the case because the plaintiff plausibly alleged that he physically delivered the claim to the IRS. *Id.* at 166-67. However, that case was decided at the motion to dismiss stage, not on a motion for summary judgment with a fully-developed record that lacks evidence that Plaintiffs actually delivered their claim to the IRS.

search of its records that found no trace of the document). "The Supreme Court has cautioned that 'it is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund.'" *Nick's Cigarette City, Inc. v. United States*, 531 F.3d 516, 522 (7th Cir. 2008) (quoting *Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 299 (1945)).

Notably, none of the records cited by Plaintiffs are "direct" evidence of mailing. And Plaintiffs have not submitted any direct evidence that Freeman received an acknowledgment from the IRS that it had received the claim he allegedly mailed or any other acknowledgment by an IRS official that the claim was received.[12] *See Philadelphia Marine*, 523 F.3d at 146, 153 (testimony of taxpayer's auditor that he received a call from a revenue officer acknowledging timely receipt of claim, along with metadata of the letter's drafting date, constituted direct evidence). Rather, they point to circumstantial evidence in the form of IRS internal files containing notations suggesting that the agency may have received and disallowed their claim. This evidence is insufficient as a matter of law.

Plaintiffs contend that proof that a claim was "disallowed" can be used to demonstrate that it was received. *See Bowerman v. United States*, 142 Fed. Cl. 794, 798 n.5 (2019) ("The record before the Court does not include a copy of the referenced letter that was mailed to Mr. Bowerman in March 2016. Nor does the IRS Transcript in the record covering actions taken with respect to tax year 2009 include any actions taken in March 2016 (although it does identify a 'claim

---

[12] The IRS did not submit any direct evidence either. *Compare McBrady v. United States*, 167 F. Supp. 3d 1012, 1017 (D. Minn. 2016) ("the IRS has submitted a Declaration of an IRS employee expressly denying that the claim was received by the agency."). Rather, Defendant supports its contention that the claim was not received by reference its discovery response. *See* ECF No. 112-6 at 7 (answering an interrogatory as to why Plaintiffs never received a formal claim denial by stating "The IRS has been able to locate neither Plaintiffs' refund claim nor documentation of its denial.") Nevertheless, as noted in the text, Plaintiffs bear the burden of establishing that they submitted their claim. They have failed to meet their burden.

disallowed' on April 11, 2016)."); *Richmond v. Comm'r*, 95 T.C.M. (CCH) 1222 n.2 (T.C. 2008) ("The record does not include a copy of a notice of claim disallowance for the taxable years 1982 and 1985. However, a transcript of petitioner's account for the taxable year 1985 includes an entry dated Jan. 6, 2003, which states "CLAIM DISALLOWED").

Significantly, however, these cases do not hold that evidence that a claim was "disallowed" can be used as a substitute for direct evidence of mailing. Rather, those courts noted that while the record of the claim—which had been properly filed—did not contain evidence that the claim had been disallowed, the account contained such a notation.

At any rate, even if the Court were to consider the record evidence that IRS records include notations about Plaintiffs' claims being "disallowed," these records do not reflect that the IRS dispensed with its procedural requirements and examined Plaintiffs' claim on the merits. And since there is no record evidence that a letter was sent to Plaintiffs notifying them of this disallowance, they cannot demonstrate that they were led to believe that the claim had been denied on the merits.

Plaintiffs argue in the alternative that equitable principles preclude Defendant from relying on "technical errors" that should have been raised earlier in this case. In support of this argument, they cite to *Goulding v. United States*, 929 F.2d 329 (7th Cir. 1991). In that case, the taxpayer filed a claim for a refund after paying a tax deficiency assessed by the IRS, arguing that he had not received the notice of deficiency and the amount was neither due nor properly assessed. *Id.* at 330. The IRS argued, after the taxpayer's statute of limitation period had expired, that the taxpayer's claim for refund was insufficient and failed to meet applicable Treasury regulations. *Id.* at 332. The Court explained that while the Treasury cannot waive the statutory requirement that a formal claim be filed, it can waive its own regulatory requirements if the IRS has sufficient knowledge of the claim and adjudicates the claim on the merits. *Id.* at 332 ("[W]hile the Treasury may not waive

the congressionally mandated requirement that a formal claim be filed, the Treasury can waive its own formal requirements"). In line with this principle, the court found that the IRS had extensive knowledge of the taxpayer's claim and had acted on the merits, as evidenced by the IRS's ability to respond substantively to the taxpayer's claims throughout the proceedings. *Id.* at 333. Moreover, the IRS did not question the sufficiency of the claim until two years after it was originally filed, nor did it raise the issue in its pleadings. *Id.* Thus, the court concluded that the IRS initially considered the claim on the merits and that dismissing the action on the late-identified defect would be fundamentally unfair.

As Defendant argues in its reply brief, however, *Goulding* was later distinguished by the Seventh Circuit in *Nick's Cigarette City, Inc. v. United States*, 531 F.3d 516 (7th Cir. 2008). The court held that the IRS did not waive its right to insist on specificity requirements:

> [in *Goulding*,] we emphasized that, in addition to the substantial delay in invoking the procedural requirements, the IRS had suggested in its disallowance letter that the claim was denied on the merits, that it had responded substantively to Goulding's claims throughout the proceedings and that it later conceded waiver explicitly and asked for a determination on the merits. *Id.* at 333. The Government's failure to assert the insufficiency defense in its initial answer was merely one of several factors that pointed toward waiver in *Goulding*. Here, on the other hand, the motion to dismiss on jurisdictional grounds was filed four months after the initial answer to the complaint (and within the district court's schedule for amending pleadings). Also, as we already have noted, the Government's disallowance letter did not suggest that Cigarette City's claim had been evaluated on the merits, and its answer to the complaint did not dispute the merits of the claim. No intervening substantive motions were filed, and the Government soon thereafter filed a motion to dismiss based solely on jurisdictional grounds. Each of the factors that pointed toward waiver in *Goulding* points in the opposite direction here.

*Id.* at 525. There, the IRS's notice of denial letters stated that "a review of the case" had occurred; by contrast, in *Goulding*, the IRS had denied the claims "per audit determination." 929 F.2d at 330.

In this case, the notations in the Account Transcripts state only "claim disallowed." As Defendant observes, this case does not resemble *Goulding.* Here, the record does not contain any

disallowance letter *at all*, so there is no basis for concluding that the IRS waived its formal requirements because: "(1) it has sufficient knowledge of the taxpayer's claim, and (2) it either makes a determination on the merits or leads the taxpayer to believe that it treated the claim as formally sufficient." *Nick's Cigarette City*, 531 F.3d at 521. Moreover, in order to find waiver, "the plaintiffs must unmistakably show that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim." *Id.* (citation omitted).

Plaintiffs have not "unmistakably shown" that the IRS dispensed with its formal requirements of how a claim must be "duly filed" and denied the refund claim on the merits. And as noted above, since no disallowance letter was issued, Plaintiffs fail to support a conclusion that they were led to believe the IRS had dispensed with its requirements and denied the claim on the merits.

It is also notable that unlike the situation in this case, both *Goulding* and *Nick's Cigarette City* concerned the IRS's regulation that a refund claim must "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof [or the claim] will not be considered for any purpose as a claim for refund or credit." 26 C.F.R. § 301.6402–2(b)(1).

This case turns on whether Plaintiffs properly submitted a timely claim for refund at all, a statutory requirement that cannot be waived. Because Plaintiffs, who bear the burden of proof, have not demonstrated that they properly filed a refund claim,[13] the Court lacks subject matter

[13] In a footnote (ECF No. 123 at 11 n.6), Plaintiffs refer to the informal claim doctrine, pursuant to which an informal claim "is sufficient if it is filed within the statutory period, puts the IRS on notice that the taxpayer believes an erroneous tax has been assessed, and describes the tax and year with sufficient particularity to allow the IRS to undertake an investigation." *PALA, Inc. Emps. Profit Sharing Plan & Tr. Agreement v. United States*, 234 F.3d 873, 877 (5th Cir. 2000). "However, the doctrine is predicated on an expectation that these formal deficiencies will at some point be corrected." *Id.* at 879. *See also BNSF Ry. Co. v. United States*, 775 F.3d 743, 758 (5th

jurisdiction to review the claim presented in this action.[14]

## V. Conclusion

For the reasons explained above, Defendants' motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied.

Appropriate orders follow.

Date: October 27, 2026

/s/Patricia L. Dodge
PATRICIA L. DODGE
CHIEF UNITED STATES MAGISTRATE JUDGE

---

Cir. 2015) (a taxpayer's "subsequent failure to file a formal claim bar[s] the court from exercising any jurisdiction over the claim.") As Defendant notes, Plaintiffs do not explain how the doctrine applies to their case and do not argue that they corrected prior deficiencies, thus making the doctrine inapplicable.

[14] Therefore, the Court need not address Defendant's alternative arguments that Plaintiffs failed to submit a proper power of attorney form for the years at issue, that Plaintiffs' recovery would be limited to tax year 2010 and that the 2010 year would be barred from recovery because the claim was submitted too late.